IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CV-482-FL

| | |
|---|---|
| VIKTOR EFREMOV, and CRODO CONSULTING, LLC, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )     ORDER<br>) |
| NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, | )<br>)<br>) |
| Defendant. | ) |

This matter is before the court upon defendant's motion to dismiss (DE 11). The motion has been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, the motion is granted.

**STATEMENT OF THE CASE**

Plaintiffs commenced this action on September 14, 2020, alleging discriminatory conduct by defendant in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act ("ADEA"), section 126-16 of the North Carolina General Statutes, the October 18, 2017, executive order of North Carolina Governor Roy Cooper, and 42 U.S.C. § 2000d.[1] Specifically, plaintiff Viktor Efremov ("Efremov") alleges his purported employment with defendant was terminated on the basis of his Russian nationality and his age and that he was subject to a hostile work environment because of his nationality. Plaintiff Crodo

---

[1] While plaintiffs' fourth claim for relief references a nonexistent 42 U.S.C. § 4000d in the body of the complaint, the heading of that section plainly references 42 U.S.C. § 2000d, otherwise known as Title VI of the Civil Rights Act of 1964, and so the court interprets plaintiffs' claim for relief as such.

Consulting, LLC ("Crodo") alleges its contract with defendant was terminated because of its perceived Russian nationality. Plaintiffs seek compensatory damages and attorneys' fees and costs.

Defendant filed the instant motion to dismiss on November 16, 2020, seeking dismissal of plaintiffs' complaint for failure to state a claim. Plaintiffs responded in opposition on December 21, 2020, and defendant replied on January 11, 2021.

## STATEMENT OF FACTS

The facts alleged in plaintiffs' complaint may be summarized as follows. Plaintiff Efremov, a resident of Raleigh, North Carolina, of Russian national origin over the age of 40, is the sole employee of plaintiff Crodo, a limited liability company organized under the laws of Delaware with its principal place of business in North Carolina.

In January 2016, defendant contracted with plaintiff Crodo for computer consulting services related to a project called "NCFAST," with plaintiff Efremov providing the personal services and skills required. Defendant required plaintiff Efremov to work a set schedule every week in its office space, using a laptop computer provided by defendant. Plaintiff Efremov was listed in defendant's organizational chart rather than plaintiff Crodo.

The majority of workers on the NCFAST project were of Indian nationality, including various managers and team leaders. Plaintiff Efremov estimates that 29 out of 33 workers in his "workgroup" were of Indian nationality and recalls that he would often hear his coworkers speaking "Hindi and Bengali" at work. (Compl. ¶ 13). Plaintiffs allege that new hires were "disproportionately of Indian nationality." (Id. ¶ 14). Plaintiff Efremov avers that his Indian peers "were assigned more favorable" and "more prestigious work assignments." (Id. ¶ 17).

In July 2019, defendant informed plaintiff Efremov that plaintiff Crodo's contract would not be renewed on August 15, 2019. Plaintiffs allege this decision was made on the basis of plaintiff

Efremov's national origin and age and the perceived Russian nationality of Crodo. Plaintiff Efremov points to his work being assigned, in part, to a coworker of Indian national origin and asserts, on information and belief, that he was "replaced with a younger worker" as part of defendant's "history of discriminating against employees over 40." (Compl. ¶¶ 19, 33-34).

Plaintiff Efremov filed a complaint with the North Carolina Office of Administrative Hearings Civil Right Division, on June 15, 2020, but his complaint was dismissed because the office determined he was in a contract position not covered by the North Carolina Human Resources Act, so it did not issue him a Right to Sue letter.

**COURT'S DISCUSSION**

A. Motion to Dismiss

1. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (quotations omitted).

2. Analysis

   a.   Plaintiff Efremov's § 1981 Claim

Plaintiff Efremov asserts that defendant violated his rights under 42 U.S.C. § 1981 by terminating him because of his nationality and by creating a hostile work environment for non-Indians. However, § 1981 does not cover such conduct, and therefore his claim on this basis fails.

Section 1981 provides in relevant part, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Federal courts have interpreted § 1981 to prohibit discrimination on the basis of race and in the realm of employment. See Saint Francis Coll. v. Al-Khazraji, 481 U.S. 604, 609 (1987) ("[T]he Court has construed the section to forbid all 'racial' discrimination in the making of private as well as public contracts."); Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 551-52 (4th Cir. 2006) ("[Section] 1981 . . . prohibits discrimination in employment on the basis of race"). But see also Dennis v. County of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995) ("[W]hen suit is brought against a state actor, § 1983 is the 'exclusive federal remedy for violation of the rights guaranteed in § 1981.'" (quoting Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 733 (1989))).[2]

However, while the United States Supreme Court has concluded "the history of § 1981" indicates "that Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics," it has also guided that to "ma[k]e out a case under § 1981" a claimant must allege something more than just that "he was subjected to intentional discrimination based on . . . the place or nation of his origin." See Al-Khazraji, 481 U.S. at 613. Accordingly, although only in unpublished opinions, the

---

[2]   Because plaintiffs do not raise any theories specific to a § 1983 claim, the court's analysis does not address such.

United States Court of Appeals for the Fourth Circuit has repeatedly held that "allegations of discrimination based purely on national origin are insufficient to state a Section 1981 claim." Nnadozie v. Genesis HealthCare Corp., 730 F. App'x 151, 157 (4th Cir. 2018); Saad v. Baltimore Life Ins. Co., 47 F. App'x 228, 232 (4th Cir. 2002) ("Section 1981 . . . does not provide protection . . . for individuals discriminated against on the basis of national origin." (quotation omitted)); see also Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 224-26 (4th Cir. 2016) (discussing "comments based on race," there, plaintiff's Arab ethnicity, "in addition to other forms of animus" as relevant to a § 1981 claim).

Here, plaintiffs admit that "the [c]omplaint couches the discrimination (perhaps unartfully) in terms of 'nationality.'" (Pl.'s Resp. (DE 16) at 6). Rightfully so, as the complaint plainly states under plaintiff Efremov's claim for relief for violations of 42 U.S.C. § 1981 that "[t]he actions of [defendant] and its management violated [plaintiff] Efremov's rights under 42 U.S.C. § 1981 . . . in that they discriminated against [plaintiff] Efremov based on his nationality[] [and] they terminated Efremov because of his nationality." (Compl. ¶ 24). Plaintiffs attempt to fend off the inevitable conclusion that the complaint fails to state a § 1981 claim on the alleged facts of national origin discrimination by claiming that "the [c]omplaint is replete with allegations of racial discrimination" in regard to defendant's purported preference for the "Indian workforce." (Pl.'s Resp. (DE 16) at 6). Plaintiffs ask the court to rely on a legal theory not raised in his complaint and one that the complaint rejects in that it does not describe plaintiff's coworkers in terms of race or ethnicity but rather explicitly in terms of their "Indian nationality." (See, e.g., Compl. ¶¶ 12-13). The court will not so do.

In alleging discrimination on the basis of his Russian national origin, plaintiff Efremov fails to state a claim upon which relief may be granted pursuant to the rights protected by § 1981. Plaintiff Efremov's § 1981 claim is dismissed without prejudice.

b.   Plaintiff Efremov's Title VII Claim

Assuming without deciding that plaintiff Efremov is an employee, rather than independent contractor, of defendant, the complaint fails to state a claim upon which relief under Title VII may be granted to plaintiff Efremov; namely, because he failed to exhaust his administrative remedies prior to filing suit.

"Before a plaintiff may file suit under Title VII or the ADEA, he is required to file a charge of discrimination with the [Equal Employment Opportunity Commission ('EEOC')]." Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009), abrogated on other grounds by Fort Bend County v. Davis, 139 S. Ct. 1843 (2019) (holding that Title VII's charge-filing requirement is not a jurisdictional requirement but rather a mandatory processing rule). However, Title VII requires that "[i]n the case of an alleged unlawful employment practice occurring in a State . . . , which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice," a complainant must first file complaint with the relevant state agency, referred to as a "deferral agency, before filing with the EEOC. See 42 U.S.C. § 2000e-5(c), (f)(1); see also Puryear v. County of Roanoke, 214 F.3d 514, 517 n.2 (4th Cir. 2000). A complaint initially filed with a state deferral agency does not constitute the required filing with the EEOC. See Davis v. N.C. Dep't of Corr., 48 F.3d 134, 137 (4th Cir. 1995) ("After a complainant has filed a claim under state law with the appropriate state agency and waited the requisite sixty days, he may file a Title VII claim with the EEOC."). In North Carolina, "[t]he Office of Administrative Hearings is designated to serve as the State's deferral agency for cases deferred by the Equal Employment Opportunity Commission." N.C. Gen. Stat. § 7A-759; see also 29 C.F.R. § 1601.74(a).

Plaintiff Efremov alleges that he filed a complaint with that office on June 15, 2020, but that the office dismissed his complaint after determining he was not covered by the North Carolina Human Resources Act. However, plaintiff Efremov does not allege that he followed the procedure of "filing of a complaint with the EEOC," which given a valid work-sharing agreement between the EEOC and the state deferral agency, could "compl[y] with Title VII's requirements for the commencement of proceedings under state or local law." See, e.g., Puryear, 214 F.3d at 521; see also Davis, 48 F.3d at 137 ("[I]f the complainant initially filed the complaint with the EEOC, which then referred it to the state, 'the EEOC automatically [will] assume[ ] concurrent jurisdiction of the complaint" when state proceedings terminate, or upon "expiration of the 60–day deferral period, whichever comes first.'" (alterations in original) (quoting N.Y. Gaslight Club, Inc. v. Carey, 447 U.S. 54, 64 (1980))). And it is not clear whether plaintiff Efremov "request[ed] that the charge be presented to the Commission" in addition when he filed with the North Carolina Office of Administrative Hearings. 29 C.F.R. § 1601.13 (b)(1); see also id. § 1601.13(b)(2)(i) ("If the [relevant state] agency has refused to accept a charge, a subsequent submission of the charge to the Commission will be processed as if it were an initial presentation . . . ." (emphasis added)).

Accordingly, accepting the complaint's alleged facts as true, plaintiff Efremov did not file a charge with the EEOC. Therefore, he has not met Title VII's mandatory processing rule, and his claims under that statute are barred by this failure. Plaintiffs' response fails to meaningfully address this issue noting only that he filed with North Carolina Office of Administrative Hearings, while correctly quoting § 2000e-5(e)(1)'s requirement that "an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice." (Pl.'s Resp. (DE 16) at 12 (emphasis added) (quoting 42 U.S.C. § 2000e-5(e)(1)). For this reason, the court dismisses plaintiff Efremov's Title VII claim without prejudice.

c. Plaintiff Efremov's ADEA Claim

In their response to defendant's motion to dismiss, "[p]laintiff[s] respectfully request[] to be allowed to amend the complaint" in reference to plaintiff Efremov's ADEA claim because, as they admit, "the [c]omplaint does not expressly state that the new worker was under 40 years of age." (Pl.'s Resp. (DE 16) at 13). The court further notes that, as highlighted above, "[b]efore a plaintiff may file suit under . . . the ADEA, he is required to file a charge of discrimination with the EEOC." Jones, 551 F.3d at 300, which, as already noted, the complaint fails to evidence. The court dismisses plaintiff Efremov's ADEA claim without prejudice for admitted failure plead the required factual predicate on both grounds.

d. Plaintiff Efremov's N.C. Gen. Stat. § 126-16 Claim and Plaintiff Crodo's Claims under North Carolina General Statutes Chapter 146, Executive Order, and Title VI

Additionally, plaintiffs in their response to defendant's motion to dismiss state that they "respectfully will withdraw and file a voluntary dismissal of their claims" under Chapter 126 and 143 of the North Carolina General Statutes and 42 USC § 2000d. (Pl.'s Resp. (DE 16) at 13). Because plaintiffs have not themselves moved to amend their complaint or otherwise voluntarily dismiss those claims, the court construes this statement as request pursuant to Federal Rule of Civil Procedure Rule 41(a). See generally Fed. R. Civ. P. 41(a)(2) (explaining that outside the circumstances in Rule 41(a)(1), "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper"). The court so grants, dismissing plaintiffs' claims under N.C. Gen. Stat. § 126-16, Chapter 143 of the North Carolina General Statutes, and 42 U.S.C. § 2000d without prejudice.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss (DE 11) is GRANTED. Plaintiffs' complaint is DISMISSED WITHOUT PREJUDICE. Plaintiffs are allowed a 21-day period of time, from the date of this order, to seek leave to file an amended complaint. In the event plaintiffs fail to

move for leave to amend complaint within 21 days of the date of this order, the clerk is DIRECTED to close this case without further order of this court.

SO ORDERED, this the 22nd day of June, 2021.

_____
LOUISE W. FLANAGAN
United States District Judge